# UNITED STATES DISTRICT COURT
## DISTRICT OF COLUMBIA

| | |
|---|---|
| MONTANA ENVIRONMENTAL INFORMATION CENTER, and CITIZENS FOR CLEAN ENERGY, and SIERRA CLUB, )<br><br>Plaintiffs, )<br><br>vs. )<br><br>MIKE JOHANNS, Secretary, United States Dept. of Agriculture, JAMES ANDREW, Administrator, Rural Utilities Service, and RICHARD FRISTIK, Senior Environmental Protection Specialist, Rural Utilities Service, )<br><br>Defendants, )<br><br>and )<br><br>SOUTHERN MONTANA ELECTRIC GENERATION & TRANSMISSION COOPERATIVE, INC., )<br><br>Proposed Defendant-Intervenor. ) | Case No.  1:07-cv-01311-JR |

### DEFENDANT-INTERVENOR-APPLICANT'S MOTION TO INTERVENE

SOUTHERN MONTANA ELECTRIC GENERATION & TRANSMISSION

COOPERATIVE, INC. ("SME"), pursuant to Rule 24(a) of the Fed. R. Civ. P., respectfully

moves this Court for leave to intervene as of right in the above-captioned action.  In the

alternative, SME moves for permissive intervention pursuant to Rule 24(b) of the Fed. R. Civ. P.

SME refers the Court to its separate Memorandum in support of this Motion and the

accompanying Declaration of Timothy Gregori (Exhibit A), a proposed Order (Exhibit B), and a

disclosure of corporate affiliation and financial interests (Exhibit C).  Applicant further requests

that this Court file the Applicant's answer (Exhibit D), which is lodged with this motion.

WHEREFORE, SME respectfully requests that the Court enter an order granting its

motion for intervention as of right, or, in the alternative, permissive intervention.


Respectfully submitted,

*Lawrence R. Liebesman*

Lawrence R. Liebesman (DC Bar no. 193086)
Holland + Knight LLP
2099 Pennsylvania Avenue, NW, Suite 100
Washington, DC  20006
t. 202-955-3000
f. 202-955-5564
email: lawrence.liebesman@hklaw.com


*Kenneth A. Reich    / by LRC*

Kenneth A. Reich (DC Bar no. 923821)
WOLF, BLOCK, SCHORR & SOLIS-COHEN, LLP
One Boston Place, 40th Floor
Boston, MA 02108
t. (617) 226-4000
f. (617) 226-4500
email:  kreich@wolfblock.com


Dated: September 12, 2007

<u>CERTIFICATE OF SERVICE</u>

I, Lawrence R. Liebesman, hereby certify that I caused a true and accurate copy of the foregoing Defendant-Intervenor-Applicant's Motion to Intervene to be served via email, on the following counsel of record on this 12th day of September, 2007:

Douglas L. Honnold
Abigail M. Dillen
Earthjustice
209 South Willson Avenue
Bozeman, MT 59715
Email: dhonnold@earthjustice.org

Stephen E. Roady
Earthjustice
1625 Massachusetts Avenue, N.W.
Washington, D.C. 20036
Email: sroady@earthjustice.org

Brian Toth, Esq.
U.S. Department of Justice
Environment and Natural Resources Division
Natural Resources Section
P.O. Box 4390
Ben Franklin Station
Washington, DC 20044-4390
Email: brian.toth@usdoj.gov

Lawrence R. Liebesman

UNITED STATES DISTRICT COURT
DISTRICT OF COLUMBIA

| | |
|---|---|
| MONTANA ENVIRONMENTAL INFORMATION CENTER, and CITIZENS FOR CLEAN ENERGY, and SIERRA CLUB, <br><br> Plaintiffs, <br><br> vs. <br><br> MIKE JOHANNS, Secretary, United States Dept. of Agriculture, JAMES ANDREW, Administrator, Rural Utilities Service, and RICHARD FRISTIK, Senior Environmental Protection Specialist, Rural Utilities Service, <br><br> Defendants, <br><br> and <br><br> SOUTHERN MONTANA ELECTRIC GENERATION & TRANSMISSION COOPERATIVE, INC., <br><br> Proposed Defendant-Intervenor. | Case No. 1:07-cv-01311-JR |

## DEFENDANT-INTERVENOR-APPLICANT'S MEMORANDUM IN SUPPORT OF MOTION TO INTERVENE

### INTRODUCTION

Southern Montana Electric Generation & Transmission Cooperative, Inc. ("SME") is a rural electric cooperative made up of five separate cooperatives as well as the City of Great Falls. SME currently serves over 60,000 rural customers, primarily farmers and ranchers, with electric services. Due to the imminent cut-off of power supply by its main electric energy supplier, the Bonneville Power Administration, SME is facing a serious crisis. Therefore, SME has applied for financing from the Rural Utilities Service ("RUS") of the United States Department of

Agriculture ("USDA"), under the Rural Electrification Act, 7 U.S.C. § 902(a) ("REA"), in order

to construct the Highwood Generating Station ("HGS").  HGS will be a coal-fired electric power

plant with associated wind turbines proposed to be located outside of Great Falls, Montana (the

"Salem site").  As required under the National Environmental Policy Act, 42 U.S.C. §§ 4321, et

seq. ("NEPA"), and the Montana Environmental Policy Act, Mont. Code Ann § 75-1-101, et seq.

("MEPA"), RUS and the Montana Department of Environmental Quality ("DEQ") prepared a

joint Environmental Impact Statement ("EIS") in connection with the proposed HGS that

analyzed the purpose and need for the project, the environmental impacts, and the energy and

geographic alternatives to the proposed project and location.  As part of the NEPA process,

potential impacts to a National Historic Landmark ("NHL") the Lewis & Clark Portage Site,

were identified.  Due to the potential for visual impacts to the NHL, and as mandated under the

National Historic Preservation Act, 16 U.S.C. §§ 407, et seq. ("NHPA") and its enacting

regulations, 36 C.F.R. § 800 et seq., RUS undertook consultation with "consulting parties" (the

"Section 106 process") in connection with its preparation of the EIS.

 RUS commenced the EIS process in the Fall of 2004 with public scoping sessions.  RUS

also participated in the Section 106 process by notifying and meeting with various consulting

parties, including SME, the Advisory Council on Historic Preservation (the "Council"), the

Montana Office of Historic Preservation ("SHPO"), non-governmental organizations ("NGO"),

and interested individuals.  SME also filed applications for an air quality permit and solid waste

disposal license with DEQ, as well as entering into an option agreement to purchase real property

at the preferred Salem site.  Following a more than two year EIS process, including preparation

of a draft and a final EIS, which were subject to public comment and two separate public

hearings in Montana, RUS issued its final EIS in February 2007.  Thereafter, as a culmination of

the NEPA process, RUS issued its Record of Decision ("ROD") in May 2007, which determined that RUS would agree to participate, subject to loan approval, in funding of the HGS at the "preferred location," Salem site. As a result of the EIS process, DEQ issued an air quality permit and solid waste disposal license to SME in connection with HGS. The air quality permit sets stringent emission limits based on "best available control technology" ("BACT"), including controlling mercury emissions, with the result that, when built, HGS will be one of the cleanest coal-fired plants in the country.

On July 20, 2007, the Montana Environmental Information Center, Citizens for Clean Energy, and the Sierra Club (collectively, the "Plaintiffs"), alleging various violations of NEPA and the NHPA, filed suit in this Court under the Administrative Procedure Act, 5 U.S.C. §§ 701-706 ("APA") for declaratory and injunctive relief against the Secretary of the USDA, the administrator of RUS, and an environmental officer of RUS directly involved in preparation of the EIS in their official capacities (collectively, the "Defendants"). The suit seeks to invalidate the ROD and to enjoin RUS from approving SME's loan application. The Environment and Natural Resources Division of the Department of Justice ("DOJ") will represent the Defendants in this action. As of the date of this motion, the Defendants have not answered, and no other pleadings have been filed in the case.

SME seeks to intervene on its own behalf as a party defendant under Fed. R. Civ. P. 24 ("Rule 24"). SME has a strong and consistently demonstrated interest in the outcome of this litigation. SME has spent over three years participating in the NEPA, MEPA, and Section 106 processes and has made significant financial investments towards securing approval of the HGS project. Among other things, these efforts have included funding the work of the federal contractor that drafted the EIS, contracting with outside consultants to conduct studies for the

EIS, securing necessary state permits and county rezoning classifications, and entering into an option agreement to purchase real property at the Salem site. In addition, because of the imminent expiration of its electric supply contract from the Bonneville Power Administration, which prompted SME to propose construction of the HGS, the future energy supply of the over 65,000 SME farmers, ranchers, and cooperative members is dependent on the outcome of this litigation. None of the existing litigants are in a position to adequately represent SME's unique interests in this case.

APPLICANT

Headquartered in Billings, Montana, SME is a rural electric cooperative that was formed in an effort to obtain cost-based, competitively-priced energy. Declaration of Timothy Gregori, General Manager of SME, at ¶ 1 (Exhibit A) ("Decl."). Five former electric distribution cooperative members of the Central Montana Electric Cooperative formed the basis of SME. Decl. at ¶ 1. SME's distribution member cooperatives are:

- Beartooth Electric Cooperative, Inc., headquartered in Red Lodge, Montana;
- Fergus Electric Cooperative, inc., headquartered in Lewistown, Montana;
- Mid-Yellowstone Electric Cooperative, Inc. headquartered in Hysham, Montana;
- Tongue River Electric Cooperative, Inc., headquartered in Ashland, Montana; and
- Yellowstone Valley Electric Cooperative, Inc., headquartered at Huntley, Montana.

Decl. at ¶ 1. Shortly after the formation of SME, the City of Great Falls joined the organization as the sixth member. Decl. at ¶ 1. The five member cooperatives serve approximately 65,000 rural Montanans. The City of Great Falls energy entity serves its municipal and corporate customers. Decl. at ¶ 2. SME's service area encompasses 22 counties in the states of Montana and Wyoming, nearly 58,000 square miles, or 40% of the total land area of Montana. Decl. at

¶ 2.  The energy is delivered to the members/consumers through distribution lines, substations, and other related infrastructure.  Decl. at ¶ 2.

Prior to June 2000, the system supply needs of these cooperatives were met through a combination of purchased power from the former Montana Power Company ("MPC") and the Western Area Power Administration ("Western").  Decl. at ¶ 3.  The member cooperatives had a defined "allocation" from Western that satisfied approximately 20% of the system supply need, with MPC meeting the remaining requirements under terms and conditions of an "all supplemental power requirements" contract that expired on June 22, 2000.  Decl. at ¶ 3.  Since the expiration of the contract with MPC, about 8% of SME's power has been purchased from the Bonneville Power Administration ("BPA").  Decl. at ¶ 4.  Unfortunately, the BPA purchase opportunity that provided SME an energy portfolio that was primarily hydroelectric generation will begin to expire in 2008, and disappear completely in 2011.  Decl. at ¶ 4.  Replacement of energy and related services provided through the BPA power purchase agreements--which represent about 80% of SME's current power supply-- will be subject to market influences and substantial cost increases.  Decl. at ¶ 4.  To deal with this imminent crisis and meet the energy needs of the member systems it serves, SME has taken a proactive role in developing a sustainable energy supply portfolio.  Decl. at ¶ 5.  After carefully reviewing feasible energy alternatives, as required by RUS regulations, SME decided to construct its own energy facility, a 250 Mw coal-fired electric plant, with associated wind turbines:  the HGS.  SME applied to the USDA's RUS for financing related to the cooperatives' share of HGS.  Decl. at ¶ 5.  The City of Great Falls, which is not eligible for RUS funds, plans to fund its portion of HGS through issuance of revenue bonds.  Decl. at ¶ 5.  Because SME is a rural electric cooperative non-profit corporation with no substantial assets other than its energy supply contracts with its cooperative

members and the City of Great Falls, it is very unlikely that SME would be able to obtain private

financing for this project; and any such financing would be at interest rates considerably higher

than those offered by RUS. Decl. at ¶ 5. Moreover, once the BPA cuts off SME's power supply,

SME will be forced to buy power on the open market, threatening its customers with significant

rate increases. Decl. at ¶ 4.

As part of the EIS process, undertaken by RUS pursuant to NEPA and its own agency

requirements, SME undertook or commissioned several studies to satisfy RUS requirements for

project justification. Decl. at ¶ 6. For example, SME contracted with Stanley Consultants, Inc.

and Bison Engineering, Inc. to provide mechanical, construction, and environmental engineering

studies. Decl. at ¶ 6. A detailed load forecast, an alternative energy evaluation, a site screening,

and a site selection study were provided to RUS for evaluation and approval; pursuant to RUS

requirements these studies also formed the basis for the EIS. Decl. at ¶ 6. SME funded and

RUS conducted the EIS, which evaluated the environmental impacts of the HGS and also

satisfied the State of Montana's requirements for an EIS under MEPA. Decl. at ¶ 6. The EIS

found no significant environmental impacts from the proposed project; it found a significant

visual impact to the NHL. Decl. at ¶ 8. SME also made application to the DEQ to secure an air

quality permit and a solid waste permit, which are prerequisite to the construction of HGS; DEQ

issued these permits to SME in May 2007. Decl. at ¶ 7. SME has also entered into an option

agreement to purchase real property at the Salem site on which to construct HGS and is in the

midst of applying for rezoning of the land to industrial from agricultural to accommodate HGS.

Decl. at ¶ 7. Finally, as part of the Section 106 process, and at great expense, SME relocated the

footprint of the proposed HGS to avoid impacts on the NHL, and has further pledged to take

extensive and costly mitigation actions to offset visual impacts to the NHL. Decl. at ¶ 9.

Due to its strong, unique, and consistently demonstrated interests in the preparation of the

EIS, in RUS's funding decision regarding the HGS, which is wholly dependent upon the ROD

withstanding the challenge presented in this lawsuit, and in the ultimate decision whether to

construct the HGS, SME respectfully requests this Court to permit its intervention.

## ARGUMENT

I.  APPLICANT IS ENTITLED TO INTERVENE AS OF RIGHT.

Rule 24 states in pertinent part:

(a) Intervention of Right. Upon timely application anyone shall be permitted to
intervene in an action: (1) when a statute of the United States confers an
unconditional right to intervene; or (2) when the applicant claims an interest
relating to the property or transaction which is the subject of the action and the
applicant is so situated that the disposition of the action may as a practical matter
impair or impede the applicant's ability to protect that interest, unless the
applicant's interest is adequately represented by existing parties.

Fed. R. Civ. P. 24(a) (2007).  Generally, courts in this Circuit have analyzed motions to intervene

as of right according to the following four factors: (1) the timeliness of the motion; (2) whether

the applicant "claims an interest relating to the property or transaction which is the subject of the

action;" (3) whether "the applicant is so situated that the disposition of the action may as a

practical matter impair or impede the applicant's ability to protect that interest," and (4) whether

"the applicant's interest is adequately represented by existing parties." United States v. Microsoft

Corp., 2002 U.S. Dist. LEXIS 26552 at *8 (citing Mova Pharmaceutical Corp. v. Shalala, 329

U.S. App. D.C. 341 (D.C. Cir. 1998)).

Notably, Courts in this Circuit have adopted an expansive attitude towards intervention

generally, and specifically to third parties seeking intervention in cases involving NEPA.

Wilderness Soc'y v. Babbitt, 104 F. Supp. 2d 10, 19 (D.D.C. 2000).  In allowing third party

intervention in a NEPA case, the Wilderness Court determined that the D.C. Circuit has taken

a liberal approach to intervention, see <u>NRDC v. Costle</u>, 183 U.S. App. D.C. 11,
561 F.2d 904, 910-11 (D.C. Cir. 1977), and has not adopted the Ninth Circuit's
rule that only the federal government can be a defendant in a NEPA case. The
Third Circuit has explicitly rejected the Ninth Circuit's approach as unduly rigid
in light of Rule 24's purpose of protecting third parties affected by the litigation.
See <u>Kleissler v. United States Forest Serv.</u>, 157 F.3d 964, 971 (3rd Cir. 1998).

<u>Wilderness Soc'y</u>, 104 F. Supp. at 19.  The <u>Kleissler</u> Court determined that an expansive

disposition towards intervention was necessary in NEPA actions because:  1) valid private,

economic interests were frequently at stake despite being divorced from and unrepresented in the

defense of appeals under NEPA; and 2) to further the principles underlying Rule 24:

> The reality is that NEPA cases frequently pit private, state, and federal interests
> against each other. Rigid rules in such cases contravene a major premise of
> intervention--the protection of third parties affected by pending litigation.
> Evenhandedness is of paramount importance. <u>See</u> Note, <u>Sierra Club v. U.S.
> Environmental Protection Agency: Intervention of Right and the Victories that
> Come Back to Haunt</u>, 7 Tul. Envtl. L.J. 271, 283 (1983).
>
> The expansion of standing by statute and case law has enabled "private attorneys
> general" and "public interest" groups to call governmental agencies to task in
> litigation. These efforts, though often well-intentioned, sometimes concentrate on
> narrow issues that are of significant concern to plaintiffs but have an immediate
> and deleterious effect on other individuals and entities. Rather than barring access
> to these parties, Rule 24 allows the court to give them the opportunity to present
> their positions.

<u>Kleissler</u>, 157 F.3d at 971 (internal citations omitted).  As explained more fully below, SME

satisfies all of the elements to intervene in the present case.

A.  <u>Applicant's Motion for Intervention is Timely</u>

In determining the timeliness factor, the court should consider "all the circumstances,

especially weighing the factors of time elapsed since the inception of the suit, the purpose for

which intervention is sought, the need for intervention as a means of preserving the applicant's

rights, and the probability of prejudice to those already parties in the case."  <u>United States v.

British American Tobacco Australia Serv.</u>, 437 F.3d 1235, 1238 (D.C. Cir. 2006) (quoting

United States v. American Tel. & Tel. Co., 642 F.2d 1285, 1295 (D.C. Cir. 1980). In the instant case, SME's motion for intervention is timely because the case is in its infancy. This motion is filed less than 60 days after the Plaintiffs filed their suit, and the Defendants have not yet filed their answer. No other actions have been filed in this case, and to prevent delaying the proceedings, the Applicant has attached its proposed answer to the Complaint herewith.

    B. Applicant Has an Interest in the Subject Matter of This Action.

    To satisfy the requirements of Rule 24(a), a putative intervenor must demonstrate an interest relating to the property or transaction that is the subject of the litigation. Fed. R. Civ. P. Rule 24(a). This so-called interest prong has been held to be a flexible standard that provides guidance to the Court in exercising its discretion regarding involving the largest number of concerned litigants without compromising efficiency and due process. Friends of Animals v. Kempthorne, 452 F. Supp.2d 64, 69 (D.D.C. 2006). The case law in this Circuit indicates that to satisfy its burden under Rule 24(a)(2), the putative intervenor must demonstrate that its interests are "protectable," that is, directly (as opposed to remotely) related to the outcome of the action. Kleissler, 157 F.3d at 972. As stated in another Circuit, if the outcome of a case would "directly alter contractual or other legally protectable rights of the proposed intervenors" then the interest element is satisfied. Wade v. Goldschmidt, 673 F.2d 182, 186 (7th Cir. 1982). In further explicating upon satisfaction of the interest prong, the Wade Court held that,

> [a]n interest, to satisfy the requirements of Rule 24(a)(2) must be significant, must be direct rather than contingent, and must be based on a right which belongs to the proposed intervenor rather than to an existing party to the suit. In Re Penn Cent. Commercial Paper Litigation, 62 F.R.D. 341, 346 (S.D.N.Y. 1974), aff'd without opinion, Shulmand v. Goldman Sachs & Co., 515 F.2d 505 (2nd Cir. 1975).

Wade, 673 F.2d at 186. Even the Ninth Circuit, despite its constricted view of intervention in NEPA actions, has held that property rights satisfy the "interest" prong under

intervention:

> In the case before us, though, the lawsuit would affect the use of real property owned by the intervenor by requiring the defendant to change the terms of permits it issues to the would-be intervenor, which permits regulate the use of that real property. These interests are squarely in the class of interests traditionally protected by law.

Sierra Club v. United States EPA, 995 F.2d 1478, 1482-83 (1993).

In the instant case, SME has significant, protectable interests in the outcome of the litigation. SME is applying to RUS for a financial loan guarantee in order to construct the HGS. Decl. at ¶ 5. In the ROD, RUS stated that it would participate in funding the HGS as a result of the findings and conclusions of the environmental impacts and other factors contained in the EIS. SME is the sole beneficiary of RUS's decision making on lending, and its interests are therefore inextricably bound to the decision in this case. Decl. at ¶ 5. Without funding from RUS, as a practical matter SME will be unable to obtain financing for this project. This is the reason RUS was created. Decl. at ¶ 5. Moreover, once the BPA cuts off SME's power supply, SME will be forced to buy power on the open market, threatening its customers with significant rate increases. Decl. at ¶ 4. As stated previously, SME funded the EIS, which evaluated the environmental impact of the HGS and satisfied the State of Montana's requirements for a state EIS. Decl. at ¶ 6. SME also conducted a number of studies which were provided to RUS and its contractors for review. Decl. at ¶ 6. SME also made application to the DEQ to secure an air quality permit and a solid waste permit, which are prerequisite to the construction of HGS; DEQ issued these permits to SME in May 2007 for the Salem site. Decl. at ¶ 7. SME has also entered into an option agreement to purchase real property at the Salem site on which to construct HGS and is in the midst of applying for rezoning of the land to industrial from agricultural to accommodate HGS. Decl. at ¶ 7. Finally, as part of the Section 106 process, SME has, at great expense,

relocated the footprint of the proposed HGS to avoid impacts on the NHL, and it has pledged to make extensive and costly mitigation efforts under a draft Memorandum of Agreement under Section 106 to further offset impacts to the NHL. Decl. at ¶ 9.

SME's sustained efforts over the past three years to assist (financially) in the preparation of the EIS reflects the profound interest it and the consumers it serves have in the construction of the HGS. SME has substantial interests in the real property upon which the HGS is proposed to be built, including options to purchase the acreage, state issued air quality and solid waste disposal permits, potential for City and county tax credits, and participation in the rezoning process for the property. The potential loss of affordable electricity to its rural customers if the RUS loan is not made could lead to catastrophic rate increases to a group of customers that can ill afford such increases. As such, SME has protectable interests in defeating the instant challenges to the ROD in the present case, which satisfy the interest prong for intervention.

### C.    Applicant's Interests in the Subject Matter of This Action May Be Impaired By This Litigation.

Under Rule 24(a), a putative intervenor by right must be "so situated that the disposition of the action may as a practical matter impair or impede the applicant's ability to protect that interest." Fed. R. Civ. P. 24(a). Again, the rule provides a practical guide to courts analyzing such motions to "look[] to the 'practical consequences' of denying intervention ... ." Natural Res. Def. Council, 561 F.2d 904, 909 (D.C. Cir. 1977) (quoting Nuesse v. Camp, 385 F.2d 694, 702 (D.C. Cir. 1967); see also Fund for Animals v. Norton, 322 F.3d 728, 735 (D.C. Cir. 2003).

With the instant case, the Plaintiffs seek to invalidate the ROD and to enjoin RUS from approving SME's loan application. Such a result will irreparably harm SME's interests in several ways. SME's multi-year effort to develop its own reliable, low-cost, base-load electricity

generation facility would be compromised, and all of the funds that have gone into preparing the EIS and satisfying the other requirements of both RUS and the DEQ would have been wasted. See, e.g., Decl. at ¶¶ 6, 7, 8 and 9. Moreover, the air quality and solid waste permits already issued for the Salem site are location specific; they are not transferable to other locations. Decl. at ¶ 7. Furthermore, under the terms of the air permit, construction must commence within 18 months of the date of the permit, i.e. November, 2008. An outcome of this litigation that overturns the ROD or enjoins RUS from funding the HGS would be irretrievably adverse to SME's interests. These potential injuries satisfy the impairment of interest prong of Rule 24(a).

D. None of the Existing Parties Will Adequately Represent SME's Interests.

The putative intervenor under Rule 24(a) must show that its interests may not be adequately represented by the current parties to the litigation. Fed. R. Civ. P. 24(a). In this Circuit, it has been held that this requirement is "not onerous," and it may be satisfied by a showing that the representation may be inadequate. Fund for Animals v. Norton, 322 F.3d 728, 735 (D.C. Cir. 2003); see also Trbovich v. United Mine Workers, 404 U.S. 528, 538 n.10 (1972); Dimond v. District of Columbia, 792 F.2d 179, 192 (D.C. Cir. 1986). Indeed, according to some courts, the putative intervenors burden of proof regarding inadequacy of representation is light in cases where the only ally might be a government litigant focused on defending a record against challenges of regulatory or statutory non-compliance:

> [a] government entity charged by law with representing a national policy is presumed adequate for the task, Brody, 957 F.2d at 1123, particularly when the concerns of the proposed intervenor, *e.g.*, a "public interest" group, closely parallel those of the public agency. In that circumstance, the "would-be intervenor [must make] a strong showing of inadequate representation." Mausolf, 85 F.3d at 1303. **But the presumption notwithstanding, when an agency's views are necessarily colored by its view of the public welfare rather than the more parochial views of a proposed intervenor whose interest is personal to it, the burden is comparatively light**. Conservation Law Found., 966 F.2d at 44; *accord* Mausolf, 85 F.3d at 1303 ("when the proposed intervenors' concern is not

a matter of 'sovereign interest,' there is no reason to think the government will represent it") ....

Kleissler v. United States Forest Serv., 157 F.3d 964, 971 (3rd Cir. 1998) (internal citations omitted) (emphasis supplied); see also American Horse Protection v. Veneman, 200 F.R.D. 153, 158 (D.D.C. 2001) (holding that "merely because parties share a general interest in the legality of a program or regulation does not mean their particular interests coincide so that representation by the agency alone is justified").

Here, neither the Plaintiffs nor the Defendants will adequately represent SME's interests. The Plaintiffs' interests are directly adverse to those of SME's. The Plaintiffs seek to overturn the ROD upon which SME's loan application to RUS hinges, and they seek to enjoin RUS from disbursing loans to SME.

Moreover, it is unlikely that the Defendants will adequately represent SME's interests in upholding the ROD and moving forward on its loan application with RUS. Again, the Defendants are being sued in their official capacities. Their representation will be conducted by staff attorneys from the Environment and Natural Resources Division of the Department of Justice ("DOJ"). Obviously, such lawyers will be highly qualified to represent the Defendants against the Plaintiffs' challenges to the record on statutory and regulatory grounds. However, it is unlikely that SME's protectable, real property and economic interests in the outcome of the litigation will be represented. Defendants' interests are more general than SME's because, under NEPA and the NHPA, they bear an obligation to represent the interests of all of members of the public, including individuals that are opposed to the construction of coal-fired power plants, or those persons who hold to the belief that no impacts on an NHL can be tolerated, with or without mitigation. Fund for Animals v. Norton, 322 F.3d 728, 737 (D.C. Cir. 2003) (holding that a government agency could not represent the "more narrow and parochial" interests of a third

party).  When, as in this case, a federal agency is obligated to represent the motivations of

different groups with competing agendas, it is impossible to expect that it will adequately

represent the "narrow and parochial" economic and property interests of a third-party, such as

SME.  Consequently, while SME shares some interests with the Defendants, the Defendants'

obligations to a much larger, public constituency makes it impossible for them to adequately

defend the narrower interests of SME.  As a result, SME satisfies the inadequate representation

prong of Rule 24(a), and this Court should permit its intervention.

Notably, a putative intervenor who satisfies the requirements for intervention of right

under Rule 24(a) "will also meet Article III's standing requirement."  Roeder v. Islamic Republic

of Iran, 333 F.3d 228, 233 (D.C. Cir. 2003).  Thus for the same reasons that they satisfy the

requirements to intervene of right under Rule 24(a), SME satisfies all relevant standing

requirements.

## II.  APPLICANT MEETS THE STANDARD FOR PERMISSIVE INTERVENTION.

As detailed above, SME meets the requirements for intervention as of right under Rule

24(a).  However, if this Court denies SME's intervention of right, SME moves the Court for

leave under Rule 24(b) to intervene.  Under Rule 24(b), permissive intervention is granted when

> [u]pon timely application anyone may be permitted to intervene in an action: (1)
> when a statute of the United States confers a conditional right to intervene; or (2)
> when an applicant's claim or defense and the main action have a question of law
> or fact in common. When a party to an action relies for ground of claim or
> defense upon any statute or executive order administered by a federal or state
> governmental officer or agency or upon any regulation, order, requirement, or
> agreement issued or made pursuant to the statute or executive order, the officer or
> agency upon timely application may be permitted to intervene in the action. In
> exercising its discretion the court shall consider whether the intervention will
> unduly delay or prejudice the adjudication of the rights of the original parties.

Fed. R. Civ. P. 24(b) (2007). The Courts of this Circuit have held permissive intervention to be appropriate when a putative intervenor timely files a motion to intervene demonstrating that the applicant's claims or defense "shares a question of law or fact in common with the underlying action," and such intervention will not compromise the rights of the parties or delay the proceedings. Acree v. Republic of Iraq, 370 F.3d 41, 49 (D.C. Cir. 2004) (quoting Fed. R. Civ. P. 24(b)).

SME meets the permissive intervention standard under Rule 24(b). As stated above, SME has a significant, protectable interest in the ROD being upheld and RUS not being enjoined to disburse loans to SME. See supra Argument, § I.B. No undue delay or compromise to the rights of parties will result from SME's intervention. See supra Argument, § I.A. Moreover, as stated above, SME was integral to the preparation of the EIS. In that regard, SME would be a productive litigant able to shed light upon the facts and issues at stake (e.g., regarding BACT, purpose and need, engineering studies, etc.). Courts have the discretion to permit intervention in those instances in which there are shared facts or legal issues between the putative intervenor's claim or defense and the action of the case. See generally California v. Bergland, 1979 U.S. Dist. LEXIS 9503 (1979). In effect, the putative intervenor will help to illuminate the court's understanding of the issues in the litigation. On this basis, the Court should allow SME's permissive intervention.

CONCLUSION

For the reasons stated above, SME respectfully requests that the Court grant its motion to intervene and allow it to intervene in this action. SME has attached to its motion to intervene this memorandum and: 1) the Declaration of Timothy Gregori,

general manager of SME, as Exhibit A; 2) a proposed Order allowing SME's motion to intervene as Exhibit B; 3) SME's disclosure of corporate interests and affiliations as Exhibit C; and 4) SME has lodged its Answer to the Complaint with the motion to intervene as Exhibit D, and SME requests the Court to enter SME's Answer on the docket.

Respectfully submitted,

Lawrence R. Liebesman (DC Bar no. 193086)
Holland + Knight LLP
2099 Pennsylvania Avenue, NW, Suite 100
Washington, DC  20006
t. 202-955-3000
f. 202-955-5564
email: lawrence.liebesman@hklaw.com


Kenneth A. Reich (DC Bar no. 923821)
WOLF, BLOCK, SCHORR & SOLIS-COHEN, LLP
One Boston Place, 40th Floor
Boston, MA 02108
t. (617) 226-4000
f. (617) 226-4500
email:  kreich@wolfblock.com


Dated: September 12, 2007

<u>CERTIFICATE OF SERVICE</u>

I, Lawrence R. Liebesman, hereby certify that I caused a true and accurate copy of the foregoing Defendant-Intervenor-Applicant's Memorandum in Support of Motion To Intervene to be served via email on the following counsel of record on this 12th day of September, 2007:

Douglas L. Honnold
Abigail M. Dillen
Earthjustice
209 South Willson Avenue
Bozeman, MT 59715
Email: dhonnold@earthjustice.org

Stephen E. Roady
Earthjustice
1625 Massachusetts Avenue, N.W.
Washington, D.C. 20036
Email: sroady@earthjustice.org

Brian Toth, Esq.
U.S. Department of Justice
Environment and Natural Resources Division
Natural Resources Section
P.O. Box 4390
Ben Franklin Station
Washington, DC 20044-4390
Email: brian.toth@usdoj.gov

Lawrence R. Liebesman

# EXHIBIT A

## UNITED STATES DISTRICT COURT
## DISTRICT OF COLUMBIA

|  |  |
|---|---|
| MONTANA ENVIRONMENTAL INFORMATION CENTER, and CITIZENS FOR CLEAN ENERGY, and SIERRA CLUB, )<br><br>Plaintiffs, )<br><br>vs. )<br><br>MIKE JOHANNS, Secretary, United States Dept. of Agriculture, JAMES ANDREW, Administrator, Rural Utilities Service, and RICHARD FRISTIK, Senior Environmental Protection Specialist, Rural Utilities Service, )<br><br>Defendants, )<br><br>and )<br><br>SOUTHERN MONTANA ELECTRIC GENERATION & TRANSMISSION COOPERATIVE, INC., )<br><br>Proposed Defendant-Intervenor. ) | Case No. 1:07-cv-01311-JR |

)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)

MONTANA ENVIRONMENTAL
INFORMATION CENTER, and
CITIZENS FOR CLEAN ENERGY, and
SIERRA CLUB,

     Plaintiffs,

vs.

MIKE JOHANNS, Secretary, United
States Dept. of Agriculture, JAMES
ANDREW, Administrator, Rural Utilities
Service, and RICHARD FRISTIK, Senior
Environmental Protection Specialist, Rural
Utilities Service,

     Defendants,

and

SOUTHERN MONTANA ELECTRIC
GENERATION & TRANSMISSION
COOPERATIVE, INC.,

     Proposed Defendant-Intervenor.

Case No. 1:07-cv-01311-JR

## DECLARATION OF TIMOTHY GREGORI, GENERAL MANAGER OF SOUTHERN MONTANA ELECTRIC GENERATION & TRANSMISSION COOPERATIVE, INC. IN SUPPORT OF DEFENDANT-INTERVENOR-APPLICANT'S MOTION TO INTERVENE

I, TIMOTHY GREGORI, declare as follows:

     1. I am the general manager of Southern Montana Electric Generation & Transmission

Cooperative, Inc. ("SME"), which is headquartered in Billings, Montana. SME is a rural electric

cooperative that was formed in an effort to obtain low-cost reliable electric energy services for

its customers. Five former electric distribution cooperative members of the Central Montana

Electric Cooperative formed SME. They are: Beartooth Electric Cooperative, Inc., headquartered in Red Lodge, Montana; Fergus Electric Cooperative, Inc., headquartered in Lewistown, Montana; Mid-Yellowstone Electric Cooperative, Inc., headquartered in Hysham, Montana; Tongue River Electric Cooperative, Inc., headquartered in Ashland, Montana; and Yellowstone Valley Electric Cooperative, Inc., headquartered at Huntley, Montana. Shortly after the formation of SME, the City of Great Falls joined the organization as the sixth member.

2. The five member cooperatives serve approximately 65,000 rural Montanans as well as municipal and corporate customers of the City of Great Falls energy provider, Electric City Power, Inc.. SME's service area encompasses 22 counties in the states of Montana and Wyoming, nearly 58,000 square miles, or 40% of the total land area of Montana. The energy is delivered to the members/consumers through distribution lines, substations, and other related infrastructure.

3. Prior to June 2000, the system supply needs of these cooperatives were met through a combination of purchased power from the former Montana Power Company ("MPC") and the Western Area Power Administration. The member cooperatives had a defined "allocation" from Western that satisfied approximately 20% of the system supply need, with MPC meeting the remaining requirements under terms and conditions of an "all supplemental power requirements" contract that expired on June 22, 2000.

4. Since the expiration of the contract with MPC, power has been purchased from the Bonneville Power Administration ("BPA"). Unfortunately, the BPA purchase opportunity that

provided SME an energy portfolio that was primarily hydroelectric generation will begin to expire in 2008, and disappear completely in 2011. Replacement of energy and related services provided through the BPA power purchase agreements will be subject to market influences and substantial cost increases.

5. To meet the energy needs of the member systems it serves, SME has taken a proactive role in developing a sustainable energy supply portfolio with the proposed construction of a new, environmentally-sensitive energy production facility, the Highwood Generating Station ("HGS"). SME applied to the United States Department of Agriculture's Rural Utilities Services ("RUS") for a loan guarantee for the construction of HGS. The City of Great Falls, which is not eligible for RUS funds, plans to fund its portion of HGS through issuance of revenue bonds. Because SME is a rural electric cooperative, non-profit corporation with no substantial assets other than its energy supply contracts with its cooperative members and the City of Great Falls, it is very unlikely that SME would be able to obtain private financing for this project; and any such financing would be at interest rates considerably higher than those offered by RUS.

6. As part of the Environmental Impact Statement ("EIS") process undertaken by RUS pursuant to the National Environmental Policy Act ("NEPA") and its own agency requirements, SME undertook or commissioned several studies to satisfy requirements for project justification. For example, SME contracted with Stanley Consultants, Inc. and Bison Engineering, Inc. to provide mechanical, construction, and environmental engineering studies. SME prepared and provided to RUS a detailed load forecast, an alternative energy evaluation, a site screening, and a site selection study for its evaluation and approval. These studies also formed the basis for the

EIS.  SME funded the production of a draft and final EIS, which evaluated the purpose and need for and environmental impacts of the HGS and also satisfied the State of Montana's requirements for a state EIS.

7.  SME also made application to the Montana Department of Environmental Quality ("DEQ") to secure an air quality permit and a solid waste permit, which are prerequisite to the construction of HGS; DEQ issued these permits to SME in May 2007.  SME has also entered into option agreements to purchase real property at the preferred Salem site on which to construct HGS and is in the midst of applying for rezoning of the land to industrial from agricultural to accommodate HGS.

8.  The EIS and joint federal-state Record of Decision for HGS found there would be no significant environmental impacts from the project.  It found there would be a significant visual impact on the adjacent Lewis and Clark Portage Site  National Historic Landmark ("NHL").

9.  As part of the Section 106 consultation process under the National Historic Preservation Act, SME has, at great expense, relocated the footprint of the proposed HGS to avoid impacts on the NHL, and SME has further pledged to take extensive and costly mitigation actions to further offset impacts to the NHL.

Pursuant to 28 U.S.C. § 1746, I declare under the penalties of perjury that the foregoing Declaration is true and correct.

_____

Timothy Gregori

Executed this __7__ day of September, 2007 at Billings, Montana.

# EXHIBIT B

# UNITED STATES DISTRICT COURT

## DISTRICT OF COLUMBIA

|  |  |
|---|---|
| MONTANA ENVIRONMENTAL INFORMATION CENTER, and CITIZENS FOR CLEAN ENERGY, and SIERRA CLUB, )<br><br>Plaintiffs, )<br><br>vs. )<br><br>MIKE JOHANNS, Secretary, United States Dept. of Agriculture, JAMES ANDREW, Administrator, Rural Utilities Service, and RICHARD FRISTIK, Senior Environmental Protection Specialist, Rural Utilities Service, )<br><br>Defendants, )<br><br>and )<br><br>SOUTHERN MONTANA ELECTRIC GENERATION & TRANSMISSION COOPERATIVE, INC., )<br><br>Defendant-Intervenor. ) | Case No.  1:07-cv-01311-JR |

## ORDER

It is hereby ORDERED this _____ day of _____, that Southern

Montana Electric Generation & Transmission Cooperative, Inc.'s Motion to Intervene in the

above-captioned matter under Fed. R. Civ. P. 24 is hereby granted.


_____
Honorable James Robertson
United States District Court Judge

# EXHIBIT C

# UNITED STATES DISTRICT COURT
# DISTRICT OF COLUMBIA

| | |
|---|---|
| MONTANA ENVIRONMENTAL INFORMATION CENTER, and CITIZENS FOR CLEAN ENERGY, and SIERRA CLUB, <br><br> Plaintiffs, <br><br> vs. <br><br> MIKE JOHANNS, Secretary, United States Dept. of Agriculture, JAMES ANDREW, Administrator, Rural Utilities Service, and RICHARD FRISTIK, Senior Environmental Protection Specialist, Rural Utilities Service, <br><br> Defendants, <br><br> and <br><br> SOUTHERN MONTANA ELECTRIC GENERATION & TRANSMISSION COOPERATIVE, INC., <br><br> Proposed Defendant-Intervenor. | Case No. 1:07-cv-01311-JR |

## DEFENDANT-INTERVENOR-APPLICANT'S DISCLOSURE OF CORPORATE AFFILIATION AND FINANCIAL INTERESTS

I, the undersigned, counsel of record for defendant-intervenor Southern Montana Electric Generation & Transmission Cooperative, Inc., certify that to the best of my knowledge and belief, defendant-intervenor has no parent companies, subsidiaries, or affiliates that have any outstanding securities in the hands of the public in the United States or abroad.

These representations are made in order that judges of this Court may determine the need for recusal.

Respectfully submitted this 12th day of September, 2007.

Lawrence R. Liebesman (DC Bar no. 193086)
Holland + Knight LLP
2099 Pennsylvania Avenue, NW, Suite 100
Washington, DC  20006
t. 202-955-3000
f. 202-955-5564
email: lawrence.liebesman@hklaw.com

CERTIFICATE OF SERVICE

I, Lawrence R. Liebesman, hereby certify that I caused a true and accurate copy of the foregoing Defendant-Intervenor-Applicant's Disclosure of Corporate Affiliation and Financial Interests to be served via email, on the following counsel of record on this 12th day of September, 2007:

Douglas L. Honnold
Abigail M. Dillen
Earthjustice
209 South Willson Avenue
Bozeman, MT 59715
Email: dhonnold@earthjustice.org

Stephen E. Roady
Earthjustice
1625 Massachusetts Avenue, N.W.
Washington, D.C. 20036
Email: sroady@earthjustice.org

Brian Toth, Esq.
U.S. Department of Justice
Environment and Natural Resources Division
Natural Resources Section
P.O. Box 4390
Ben Franklin Station
Washington, DC 20044-4390
Email: brian.toth@usdoj.gov

Lawrence R. Liebesman

# EXHIBIT D

UNITED STATES DISTRICT COURT
DISTRICT OF COLUMBIA

|  |  |
|---|---|
| MONTANA ENVIRONMENTAL INFORMATION CENTER, and CITIZENS FOR CLEAN ENERGY, and SIERRA CLUB, <br><br> Plaintiffs, <br><br> vs. <br><br> MIKE JOHANNS, Secretary, United States Dept. of Agriculture, JAMES ANDREW, Administrator, Rural Utilities Service, and RICHARD FRISTIK, Senior Environmental Protection Specialist, Rural Utilities Service, <br><br> Defendants, <br><br> and <br><br> SOUTHERN MONTANA ELECTRIC GENERATION & TRANSMISSION COOPERATIVE, INC., <br><br> Defendant-Intervenor. | Case No.  1:07-cv-01311-JR |

**ANSWER OF DEFENDANT-INTERVENOR SOUTHERN MONTANA ELECTRIC GENERATION & TRANSMISSION COOPERATIVE, INC. TO COMPLAINT FILED BY PLAINTIFFS**

The numbered paragraphs and captions in this Answer correspond to those contained in the Plaintiff's Complaint ("Complaint"), without any admissions by Defendant-Intervenor as to the truth or accuracy of the captions.

COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF

1.    Paragraph 1 of the Complaint characterizes the Plaintiff's case and to the extent that it contains legal conclusions, no response is required.  To the extent that a response is

required, the United States Supreme Court case cited and the President's proposed 2008 budget speak for themselves and are the best evidence of their own contents. To the extent that this paragraph sets forth additional factual allegations, Southern Montana Electric Generation & Transmission Cooperative, Inc., ("SME") lacks sufficient knowledge and information to establish a belief as to the truth of these allegations. To the extent that any further response is required, the remaining allegations contained in this paragraph are denied.

2.    It is admitted that the United States Department of Agriculture's ("USDA") Rural Utilities Service ("RUS") may elect to "participate in the funding" of the Highwood Generating Station ("HGS"). To the extent that this paragraph sets forth conclusions of law, no further response is required. To the extent that this paragraph sets forth additional factual allegations, SME lacks sufficient knowledge and information to establish a belief as to the truth of these allegations. To the extent that any further response is required, the remaining allegations in this paragraph are denied.

3.    To the extent that this paragraph contains legal conclusions, no response is required. Further, the Environmental Impact Statement ("EIS") for the proposed HGS thoroughly evaluated the impacts of the proposed HGS and concluded that there would be no adverse environmental impacts from the plant; there will be a visible impact on a portion of the Great Falls Portage National Historic Landmark ("NHL"), but there is no evidence that the HGS will lead to the destruction of the NHL. SME has agreed to avoid and mitigate the impacts on the NHL as a result of the Section 106 process under the National Historic Preservation Act ("NHPA"). To the extent that this paragraph sets forth additional factual allegations, those allegations are denied.

JURISDICTION AND VENUE

4.      To the extent that this paragraph contains legal conclusions, no response is required.  To the extent that a response is required, the Administrative Procedure Act, NEPA, and the NHPA speak for themselves and are the best evidence of their own contents.

5.      SME admits that the Court has subject matter jurisdiction over this action.

6.      SME admits that venue is proper in this district.  To the extent that this paragraph contains legal conclusions, no response is required.

PARTIES

7.      SME lacks sufficient knowledge and information to establish a belief as to the truth of the allegations contained in this paragraph.  To the extent that any further response is required, the allegations of this paragraph are denied.

8.      SME admits that Montana Environmental Information Center ("MEIC") submitted comments during the EIS process.  To the extent that this paragraph sets forth additional factual allegations, the allegations are denied.

9.      SME admits that Citizens for Clean Energy ("CCE") submitted comments to RUS concerning the project, lacks sufficient knowledge and information to establish a belief as to the truth of many of the allegations contained in this paragraph, and denies the rest of the allegations of this paragraph.

10.      SME lacks sufficient knowledge and information to establish a belief as to the truth of the allegations contained in this paragraph.  To the extent that any further response is required, the remaining allegations of this paragraph are denied.

11.      SME lacks sufficient knowledge and information to establish a belief as to the truth of the allegations contained in this paragraph, except it believes that MEIC and CCE have

members who reside in Montana. To the extent that any further response is required, the remaining allegations of this paragraph are denied.

12.    SME lacks sufficient knowledge and information to establish a belief as to the truth of the allegations contained in this paragraph. To the extent that any further response is required, the allegations of this paragraph are denied.

13.    It is admitted that Mike Johanns is the Secretary of the USDA. To the extent that any further response is required, the remaining allegations of this paragraph are denied.

14.    It is admitted that James Andrew is the Administrator of RUS and that Mr. Andrews has received correspondence from the Executive Director of the Advisory Council on Historic Preservation ("ACHP"). SME lacks sufficient knowledge and information to establish a belief as to the truth of the remaining allegations contained in this paragraph. To the extent that any further response is required, the remaining allegations of this paragraph are denied.

15.    It is admitted that Richard Fristik is an environmental specialist at RUS and that he has been involved with the National Environmental Policy Act ("NEPA") and NHPA processes involving the proposed HGS. SME lacks sufficient knowledge and information to establish a belief as to the truth of the remaining allegations contained in this paragraph. To the extent that any further response is required, the remaining allegations of this paragraph are denied.

## RUS FINANCING FOR COAL-FIRED POWER PLANTS

16.    To the extent that this paragraph contains legal conclusions, no response is required. To the extent that a response is required, the federal programs cited speak for themselves and are the best evidence of their own contents. SME lacks sufficient knowledge and information to establish a belief as to the truth of the remaining allegations contained in this

paragraph. To the extent that any further response is required, the allegations of this paragraph are denied.

17.    SME lacks sufficient knowledge and information to establish a belief as to the truth of the allegations contained in this paragraph. To the extent that any further response is required, the allegations of this paragraph are denied.

18.    SME lacks sufficient knowledge and information to establish a belief as to the truth of the allegations contained in this paragraph. To the extent that any further response is required, the allegations of this paragraph are denied.

## THE RUS LOAN PROGRAM

19.    To the extent that this paragraph contains legal conclusions, no response is required. To the extent that a response is required, the statutes and regulations cited speak for themselves and are the best evidence of their own contents. SME lacks sufficient knowledge and information to establish a belief as to the truth of the remaining allegations contained in this paragraph. To the extent that any further response is required, the allegations of this paragraph are denied.

20.    To the extent that this paragraph contains legal conclusions, no response is required. To the extent that a response is required, the regulations cited speak for themselves and are the best evidence of their own contents. SME lacks sufficient knowledge and information to establish a belief as to the truth of the remaining allegations contained in this paragraph. To the extent that any further response is required, the allegations of this paragraph are denied.

21.    To the extent that this paragraph contains legal conclusions, no response is required. To the extent that a response is required, President Bush's 2008 proposed budget speaks for itself and is the best evidence of its own contents. Further, said budget is a proposal

only and has no independent "force of law."  SME lacks sufficient knowledge and information to establish a belief as to the truth of the remaining allegations contained in this paragraph.  To the extent that any further response is required, the remaining allegations of this paragraph are denied.

22.     To the extent that this paragraph contains legal conclusions, no response is required.  SME lacks sufficient knowledge and information to establish a belief as to the truth of the remaining allegations contained in this paragraph.  To the extent that any further response is required, the remaining allegations of this paragraph are denied.

THE HIGHWOOD COAL PLANT'S ENVIRONMENTAL IMPACTS

23.     SME lacks sufficient knowledge and information to establish a belief as to the truth of the allegations contained in this paragraph.  To the extent that any further response is required, the allegations of this paragraph are denied.

RUS's NEPA Analysis For the Highwood Plant

24.     It is admitted that RUS issued its Record of Decision ("ROD") for the HGS on May 10, 2007 and that SME is the proponent of the HGS.  It is further admitted that announcements were made regarding the release of the Draft EIS in June 2006 and the Final EIS in January 2007 and comments thereto were invited on each occasion.  SME denies the remaining allegations contained in this paragraph and further avers that in response to comments from the public under the NEPA process, and at considerable expense, SME agreed to move the footprint of the power plant off of the NHL

25.     SME lacks sufficient knowledge and information to establish a belief as to the truth of the allegations contained in this paragraph.  To the extent that any further response is

required, the allegations of this paragraph are denied. SME further avers that it will agree to the mitigation measures set forth in the final EIS and the ROD, including those related to the NHL.

### The Highwood Coal Plant

26.     It is admitted that the HGS would utilize a circulating fluidized bed ("CFB") boiler and associated equipment and wind turbines. SME denies the remaining allegations contained in this paragraph and further avers that the land on which the project will be built is not "protected farmland".

### Global Warming Impacts

27.     SME lacks sufficient knowledge and information to establish a belief as to the truth of the allegations contained in this paragraph. To the extent that any further response is required, the allegations of this paragraph are denied.

28.     To the extent that this paragraph contains legal conclusions, no response is required. To the extent that a response is required, the reports and Supreme Court case cited speak for themselves and are the best evidence of their own contents. SME lacks sufficient knowledge and information to establish a belief as to the truth of the remaining allegations contained in this paragraph. To the extent that any further response is required, the allegations of this paragraph are denied.

29.     To the extent that this paragraph contains legal conclusions, no response is required. To the extent that a response is required, the EIS speaks for itself and is the best evidence of its own contents. SME lacks sufficient knowledge and information to establish a belief as to the truth of the remaining allegations contained in this paragraph. To the extent that any further response is required, the allegations of this paragraph are denied.

<u>Regional Air Pollution</u>

30.    SME denies the allegations contained in this paragraph and avers that the EIS
found that the proposed HGS will not have any significant environmental impacts and avers
further that the air quality permit for the plant will control emissions at levels that will be among
the most stringent in the nation for coal-fired power plants.

31.    To the extent that this paragraph contains legal conclusions, no response is
required.  To the extent that a response is required, the EIS speaks for itself and is the best
evidence of its own contents.  SME lacks sufficient knowledge and information to establish a
belief as to the truth of the remaining allegations contained in this paragraph.  To the extent that
any further response is required, the allegations of this paragraph are denied, and SME avers
further that the air quality permit for the plant will control emissions at levels that will be among
the most stringent in the nation for coal-fired power plants.

32.    To the extent that this paragraph contains legal conclusions, no response is
required.  To the extent that a response is required, the EIS, studies, and regulations cited speak
for themselves and are the best evidence of their own contents.  To the extent that any further
response is required, SME avers that the particulate matter ("PM") 2.5 emissions from the HGS
will be far less than the amount of PM 10 emissions.

33.    To the extent that this paragraph contains legal conclusions, no response is
required.  SME lacks sufficient knowledge and information to establish a belief as to the truth of
the remaining allegations contained in this paragraph.  To the extent that any further response is
required, the allegations of this paragraph are denied.  SME further avers that the PM 2.5
emissions from the HGS will be far less than that stated in the Complaint, and it will not exceed
the PM 2.5 National Ambient Air Quality Standard ("NAAQS").

34.    To the extent that this paragraph contains legal conclusions, no response is required.  To the extent that a response is required, the EIS speaks for itself and is the best evidence of its own contents.  SME lacks sufficient knowledge and information to establish a belief as to the truth of the remaining allegations contained in this paragraph.  To the extent that any further response is required, the allegations of this paragraph are denied.  SME further avers that in accordance with its air quality permit it will control mercury emissions to levels as stringent as any in the country and will, if necessary, use activated carbon or similar technologies for this purpose.  Other air emissions will be controlled by best available control technology required in the air permit and, according to the EIS, will not pose any significant threats to health or the environment.

35.    SME denies the allegations contained in this paragraph and avers that the air quality permit and EIS establish that there will be insignificant to no visibility impairments in Class I areas.

<u>Water Pollution</u>

36.    It is admitted that the HGS would utilize up to 3,500 gallons of water per minute from the Missouri River.  SME denies the remaining allegations contained in this paragraph, avers that the EIS found that any water impacts from the HGS would be insignificant, and further avers that a portion of the water drawn from the Missouri River will be eventually discharged back into the Missouri River after its treatment by the City of Great Falls water treatment system.

37.    It is admitted that the HGS would produce approximately 225 tons of solid waste a day and that this waste would be disposed of on the premises in a lined "monofill."  SME denies the remaining allegations contained in this paragraph, and avers that solid ash waste

disposal will be conducted in accordance with a solid waste permit issued by the State of Montana.

38.    To the extent that this paragraph contains legal conclusions, no response is required. SME lacks sufficient knowledge and information to establish a belief as to the truth of the remaining allegations contained in this paragraph. To the extent that any further response is required, the allegations of this paragraph are denied. SME further avers that it has agreed to voluntarily take a solid waste license for its ash monofill.

39.    To the extent that this paragraph contains legal conclusions, no response is required. To the extent that a response is required, the report cited speaks for itself and is the best evidence of its own contents. SME lacks sufficient knowledge and information to establish a belief as to the truth of the remaining allegations contained in this paragraph. To the extent that any further response is required, the allegations of this paragraph are denied.

40.    To the extent that this paragraph contains legal conclusions, no response is required. To the extent that a response is required, the USDA survey cited speaks for itself and is the best evidence of its own contents. SME lacks sufficient knowledge and information to establish a belief as to the truth of the remaining allegations contained in this paragraph. To the extent that any further response is required, the allegations of this paragraph are denied. SME further avers that according to a recent USDA "Custom Soil Resource Report for Cascade County, Montana" (the "Soil Report"), the soil where the HGS monofills are proposed to be located was deemed "not limited" (i.e., highly suitable) for use as a sanitary landfill; the only soils deemed "very limited" (i.e., unsuitable) for landfill use are outside the landfill footprint.

Loss of Historic Landmark Status

41.     It is admitted that the HGS would be built near the boundaries of the NHL (the "Salem site").  SME denies the remaining allegations contained in this paragraph.

42.     To the extent that this paragraph contains legal conclusions, no response is required.  To the extent that a response is required, the report cited speaks for itself and is the best evidence of its own contents.  It is admitted that the NHL commemorates the portage around the Great Falls of the Missouri River that the Lewis and Clark Expedition's Corps of Discovery made.  SME lacks sufficient knowledge and information to establish a belief as to the truth of the remaining allegations contained in this paragraph.  To the extent that any further response is required, the allegations of this paragraph are denied.  SME further avers that most of the cited portions of the NHL will not be visually impacted by the proposed plant and that the EIS does not find that the HGS will "destroy" the NHL.  SME further avers that it moved the footprint of the power plant off the boundary of the NHL.

43.     To the extent that this paragraph contains legal conclusions, no response is required.  To the extent that a response is required, the report cited speaks for itself and is the best evidence of its own contents.  SME lacks sufficient knowledge and information to establish a belief as to the truth of the remaining allegations contained in this paragraph.

44.     To the extent that this paragraph contains legal conclusions, no response is required.  To the extent that a response is required, the report cited speaks for itself and is the best evidence of its own contents.  SME lacks sufficient knowledge and information to establish a belief as to the truth of the remaining allegations contained in this paragraph.  To the extent that any further response is required, the allegations of this paragraph are denied.

45.     To the extent that this paragraph contains legal conclusions, no response is required. To the extent that a response is required, the letter cited speaks for itself and is the best evidence of its own contents. SME lacks sufficient knowledge and information to establish a belief as to the truth of the remaining allegations contained in this paragraph. To the extent that any further response is required, the allegations of this paragraph are denied. SME further avers that there are many other portions of the Lewis & Clark Trail, including in Montana, that are far more pristine and accessible than the cited portion of the NHL.

### NEED FOR THE HIGHWOOD COAL PLANT

46.     SME denies the allegations contained in this paragraph.

47.     It is admitted that SME seeks financing from RUS to fund construction of the HGS and that the HGS is required to replace the electricity SME will no longer be able to purchase owing to the expiration of current power contracts. SME denies the remaining allegations contained in this paragraph and avers that the EIS establishes the purpose and need for the proposed HGS.

48.     SME denies the allegations contained in this paragraph, except that it admits that the numbers of meters is approximately correct, not including the City of Great Falls. SME avers that its system peak demand for the period ending July 2007 was approximately 150 mW with a system load factor of approximately 62%. When adjusted to account for "physical" reserves and transmission system losses that figure would become approximately 172 mW. Over the course of the past several years SME's system demand has been increasing on an annual basis. SME's projected peak demand for the year 2017 is approximately 215 Mw, including reserves and losses.

49.     SME denies the allegations contained in this paragraph and repeats the averments of paragraph 48 above as if fully incorporated herein.

50.     It is admitted that SME forecasts increases in its subscriber base and that the EIS reflects these estimates.  SME denies the remaining allegations contained in this paragraph.

51.     SME denies the allegations contained in this paragraph.

FAILURE TO CONSIDER ALTERNATIVE SOLUTIONS

52.     SME denies the allegations contained in this paragraph.

53.     SME denies the allegations contained in this paragraph.  Further, SME avers that the EIS contains a detailed evaluation of alternatives.

54.     To the extent that a response is required, the report cited speaks for itself and is the best evidence of its own contents.  SME avers that the report affirms the conclusions of the EIS that there is a purpose and need for the HGS.  To the extent that any further response is required, the allegations of this paragraph are denied.

55.     To the extent that a response is required, the report cited speaks for itself and is the best evidence of its own contents.  SME lacks sufficient knowledge and information to establish a belief as to the truth of the remaining allegations contained in this paragraph.  SME avers that any cost of future carbon regulation will likely be borne by the entire United States economy, including the power sector, and that SME is exploring the sale of $CO_2$ and is applying for government grants, which will reduce the overall costs of $CO_2$ capture and sequestration.  To the extent that any further response is required, the remaining allegations of this paragraph are denied.

56.     It is admitted that SME is exploring the feasibility of carbon capture and sequestration  at HGS.  SME lacks sufficient knowledge and information to establish a belief as

to the truth of the remaining allegations contained in this paragraph. To the extent that any further response is required, the allegations of this paragraph are denied.

57.    To the extent that a response is required, the report cited speaks for itself and is the best evidence of its own contents. SME lacks sufficient knowledge and information to establish a belief as to the truth of the remaining allegations contained in this paragraph. SME incorporates the averments of paragraph 56 above as if fully incorporated herein and further avers that the EIS fully analyzed the cost of wind. To the extent that any further response is required, the remaining allegations of this paragraph are denied.

58.    SME denies the allegations contained in this paragraph.

### FAILURE TO CONSIDER ALTERNATIVE SITES

59.    SME denies the allegations contained in this paragraph, and avers that the EIS and ROD summarize the detailed analysis conducted of other alternative sites.

60.    SME denies the allegations contained in this paragraph and avers that any alleged error in the description of the site location was cured and is immaterial to the analysis of potential impacts on the NHL.

61.    SME denies the allegations contained in this paragraph.

62.    SME denies the allegations contained in this paragraph. SME avers that the quoted statement of defendant Richard Fristik is incomplete and misleading in that Mr. Fristik invited the consulting parties to suggest feasible alternatives to the Salem site.

### RUS' DUTIES UNDER NEPA AND THE NHPA

63.    To the extent that this paragraph contains legal conclusions, no response is required. To the extent that a response is required, the statutes cited speak for themselves and are the best evidence of their own contents.

### NEPA's Requirements

64.    To the extent that this paragraph contains legal conclusions, no response is required. To the extent that a response is required, the statutes and regulations cited speak for themselves and are the best evidence of their own contents.

65.    To the extent that this paragraph contains legal conclusions, no response is required. To the extent that a response is required, the regulations cited speak for themselves and are the best evidence of their own contents.

66.    To the extent that this paragraph contains legal conclusions, no response is required. To the extent that a response is required, the regulations cited speak for themselves and are the best evidence of their own contents.

67.    To the extent that this paragraph contains legal conclusions, no response is required. To the extent that a response is required, the regulations cited speak for themselves and are the best evidence of their own contents.

68.    To the extent that this paragraph contains legal conclusions, no response is required. To the extent that a response is required, the regulations cited speak for themselves and are the best evidence of their own contents.

### NHPA's Requirements

69.    To the extent that this paragraph contains legal conclusions, no response is required. To the extent that a response is required, the statute speaks for itself and is the best evidence of its own contents.

70.    To the extent that this paragraph contains legal conclusions, no response is required. To the extent that a response is required, the statutes and regulations cited speak for themselves and are the best evidence of their own contents.

71.    To the extent that this paragraph contains legal conclusions, no response is required.  To the extent that a response is required, the regulations cited speak for themselves and are the best evidence of their own contents.

## FIRST CAUSE OF ACTION

72.    In response to paragraph 72, SME incorporates its responses to paragraphs 1-71 of this Answer as if fully incorporated herein.

73.    SME lacks sufficient knowledge and information to establish a belief as to the truth of the allegations contained in this paragraph.  To the extent that any further response is required, the allegations of this paragraph are denied.

74.    To the extent that this paragraph contains legal conclusions, no response is required.  To the extent that a response is required, the statutes and regulations cited speak for themselves and are the best evidence of their own contents.

75.    To the extent that this paragraph contains legal conclusions, no response is required.  To the extent that a response is required, the statutes and regulations cited speak for themselves and are the best evidence of their own contents.  SME lacks sufficient knowledge and information to establish a belief as to the truth of the remaining allegations contained in this paragraph.  To the extent that any further response is required, the remaining allegations of this paragraph are denied.

## SECOND CAUSE OF ACTION

76.    In response to paragraph 76, SME incorporates its responses to paragraphs 1-75 of this Answer as if fully incorporated herein.

77.     To the extent that this paragraph contains legal conclusions, no response is required. To the extent that a response is required, the statute speaks for itself and is the best evidence of its own contents. SME denies the remaining allegations contained in this paragraph.

78.     To the extent that this paragraph contains legal conclusions, no response is required. To the extent that a response is required, the statutes and regulations cited speak for themselves and are the best evidence of their own contents.

79.     To the extent that this paragraph contains legal conclusions, no response is required. To the extent that a response is required, the statutes and regulations cited speak for themselves and are the best evidence of their own contents. SME lacks sufficient knowledge and information to establish a belief as to the truth of the remaining allegations contained in this paragraph. To the extent that any further response is required, the allegations of this paragraph are denied.

### THIRD CAUSE OF ACTION

80.     In response to paragraph 80, SME incorporates its responses to paragraphs 1-79 of this Answer as if fully incorporated herein.

81.     To the extent that this paragraph contains legal conclusions, no response is required. To the extent that a response is required, the statute speaks for itself and is the best evidence of its own contents. SME lacks sufficient knowledge and information to establish a belief as to the truth of the remaining allegations contained in this paragraph. To the extent that any further response is required, the allegations of this paragraph are denied.

82.     To the extent that this paragraph contains legal conclusions, no response is required. To the extent that a response is required, the statutes and regulations cited speak for themselves and are the best evidence of their own contents. SME lacks sufficient knowledge and

information to establish a belief as to the truth of the remaining allegations contained in this paragraph. To the extent that any further response is required, the allegations of this paragraph are denied.

### FOURTH CAUSE OF ACTION

#### Violation of NEPA
(Supplemental EIS)

83.    In response to paragraph 83, SME incorporates its responses to paragraphs 1-82 of this Answer as if fully incorporated herein.

84.    To the extent that this paragraph contains legal conclusions, no response is required. To the extent that a response is required, the statute speaks for itself and is the best evidence of its own contents. SME lacks sufficient knowledge and information to establish a belief as to the truth of the remaining allegations contained in this paragraph. To the extent that any further response is required, the allegations of this paragraph are denied.

85.    To the extent that this paragraph contains legal conclusions, no response is required. SME lacks sufficient knowledge and information to establish a belief as to the truth of the remaining allegations contained in this paragraph. To the extent that any further response is required, the allegations of this paragraph are denied.

86.    To the extent that this paragraph contains legal conclusions, no response is required. SME lacks sufficient knowledge and information to establish a belief as to the truth of the remaining allegations contained in this paragraph. To the extent that any further response is required, the allegations of this paragraph are denied.

87.    To the extent that this paragraph contains legal conclusions, no response is required. To the extent that a response is required, the statutes and regulations cited speak for themselves and are the best evidence of their own contents. SME lacks sufficient knowledge and

information to establish a belief as to the truth of the remaining allegations contained in this paragraph. To the extent that any further response is required, the allegations of this paragraph are denied.

FIFTH CAUSE OF ACTION

Violation of NEPA
(Failure To Assess Harms From Inadequate Solid Waste Disposal)

88.    In response to paragraph 88, SME incorporates its responses to paragraphs 1-87 of this Answer as if fully incorporated herein.

89.    To the extent that this paragraph contains legal conclusions, no response is required. To the extent that a response is required, the statute, regulations, data, EIS, and report cited speak for themselves and are the best evidence of their own contents. SME lacks sufficient knowledge and information to establish a belief as to the truth of the remaining allegations contained in this paragraph. To the extent that any further response is required, the allegations of this paragraph are denied.

90.    To the extent that this paragraph contains legal conclusions, no response is required. To the extent that a response is required, the statutes, regulations, and EIS cited speak for themselves and are the best evidence of their own contents. SME lacks sufficient knowledge and information to establish a belief as to the truth of the remaining allegations contained in this paragraph. To the extent that any further response is required, the allegations of this paragraph are denied.

SIXTH CAUSE OF ACTION

Violation of NEPA
(Failure To Assess Compliance With Health-Based Clean Air Act Standards)

91.    In response to paragraph 91, SME incorporates its responses to paragraphs 1-90 of this Answer as if fully incorporated herein.

92.    To the extent that this paragraph contains legal conclusions, no response is required. To the extent that a response is required, the statute speaks for itself and is the best evidence of its own contents. SME lacks sufficient knowledge and information to establish a belief as to the truth of the remaining allegations contained in this paragraph. To the extent that any further response is required, the allegations of this paragraph are denied.

93.    To the extent that this paragraph contains legal conclusions, no response is required. To the extent that a response is required, the statutes and regulations cited speak for themselves and are the best evidence of their own contents. SME lacks sufficient knowledge and information to establish a belief as to the truth of the remaining allegations contained in this paragraph. To the extent that any further response is required, the allegations of this paragraph are denied.

94.    To the extent that this paragraph contains legal conclusions, no response is required. To the extent that a response is required, the statutes cited speak for themselves and are the best evidence of their own contents. SME lacks sufficient knowledge and information to establish a belief as to the truth of the remaining allegations contained in this paragraph. To the extent that any further response is required, the allegations of this paragraph are denied.

SEVENTH CAUSE OF ACTION

Violation of NEPA
(Failure To Comply With NHPA Consultation Requirements)

95.     In response to paragraph 95, SME incorporates its responses to paragraphs 1-94 of this Answer as if fully incorporated herein.

96.     To the extent that this paragraph contains legal conclusions, no response is required. To the extent that a response is required, the statute speaks for itself and is the best evidence of its own contents. SME lacks sufficient knowledge and information to establish a belief as to the truth of the remaining allegations contained in this paragraph. To the extent that any further response is required, the allegations of this paragraph are denied.

97.     To the extent that this paragraph contains legal conclusions, no response is required. To the extent that a response is required, the statute and regulations cited speak for themselves and are the best evidence of their own contents. SME lacks sufficient knowledge and information to establish a belief as to the truth of the remaining allegations contained in this paragraph. To the extent that any further response is required, the allegations of this paragraph are denied.

98.     SME lacks sufficient knowledge and information to establish a belief as to the truth of the allegations contained in this paragraph. To the extent that any further response is required, the allegations of this paragraph are denied.

99.     To the extent that this paragraph contains legal conclusions, no response is required. To the extent that a response is required, the statute and regulations cited speak for themselves and are the best evidence of their own contents. SME lacks sufficient knowledge and information to establish a belief as to the truth of the remaining allegations contained in this

paragraph. To the extent that any further response is required, the allegations of this paragraph are denied.

## REQUEST FOR RELIEF

The remainder of the Complaint constitutes Plaintiffs' requests for relief to which no response is required. SME avers that Plaintiffs are not entitled to relief on any of the claims and that the Court should dismiss the Complaint in its entirety with prejudice.

## **GENERAL DENIAL**

SME denies any allegations of the Complaint, whether express or implied, that are not expressly admitted or qualified in this Answer.

## **AFFIRMATIVE DEFENSES**

### FIRST AFFIRMATIVE DEFENSE

Under Fed. R. Civ. P. 12(b)(2), this Court does not have personal jurisdiction over the plaintiffs with respect to the global warming causes of action since they lack standing to assert such causes of action

### SECOND AFFIRMATIVE DEFENSE

Under Fed. R. Civ. P. 12(b)(6), the Plaintiffs' have failed to state a claim upon which relief can be granted.

### THIRD AFFIRMATIVE DEFENSE

Plaintiffs' First Cause of Action, and all other Complaint claims that are premised in whole or in part on global warming, fail to state a claim upon which relief may be granted under Fed. R. Civ. P. 12(b)(6).

## FOURTH AFFIRMATIVE DEFENSE

SME reserves the right to name additional affirmative defenses as they are discovered at any time after the filing of this Answer and before trial.


WHEREFORE, SME denies that the Plaintiffs are entitled to requested relief or for any relief whatsoever, and SME requests that this Court:

i.      Dismiss this action with prejudice;

ii.     Enter judgment in favor of the Defendants and SME and against the Plaintiffs;

iii.    Award reasonable costs and attorneys fees to SME;

iv.     Grant all other such relief that this Court deems just and reasonable.



Respectfully submitted,

Lawrence R. Liebesman (DC Bar no. 193086)
Holland + Knight LLP
2099 Pennsylvania Avenue, NW, Suite 100
Washington, DC  20006
t. 202-955-3000
f. 202-955-5564
email: lawrence.liebesman@hklaw.com


Kenneth A. Reich (DC Bar no. 923821)
WOLF, BLOCK, SCHORR & SOLIS-COHEN, LLP
One Boston Place, 40th Floor
Boston, MA 02108
t. (617) 226-4000
f. (617) 226-4500
email:  kreich@wolfblock.com

Dated: September 12, 2007

CERTIFICATE OF SERVICE

I, Lawrence R. Liebesman, hereby certify that I caused a true and accurate copy of the foregoing Answer of Defendant-Intervenor Southern Montana Electric Generation & Transmission Cooperative, Inc. to Complaint Filed by Plaintiffs to be served via email, on the following counsel of record on this 12th day of September, 2007:

Douglas L. Honnold
Abigail M. Dillen
Earthjustice
209 South Willson Avenue
Bozeman, MT 59715
Email: dhonnold@earthjustice.org

Stephen E. Roady
Earthjustice
1625 Massachusetts Avenue, N.W.
Washington, D.C. 20036
Email: sroady@earthjustice.org

Brian Toth, Esq.
U.S. Department of Justice
Environment and Natural Resources Division
Natural Resources Section
P.O. Box 4390
Ben Franklin Station
Washington, DC 20044-4390
Email: brian.toth@usdoj.gov

Lawrence R. Liebesman